TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5423
    Facsimile: (213) 894-6269
    E-mail:    Kerry.L.Quinn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-151-RGK |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT BIANCA GONZALEZ |
| v. | |
| BIANCA GONZALEZ, | |
| Defendant. | |

1.    This constitutes the plea agreement between BIANCA GONZALEZ ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

    a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in United States v. BIANCA GONZALEZ, CR No. 21-151-RGK,

which charges defendant with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

1   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

2   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

3   criminal debt shall be assessed based on the completed Financial

4   Disclosure Statement and all required supporting documents, as well

5   as other relevant information relating to ability to pay.

6          j.   Authorize the USAO to obtain a credit report upon

7   returning a signed copy of this plea agreement.

8          k.   Consent to the USAO inspecting and copying all of

9   defendant's financial documents and financial information held by the

10   United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

12     3.   The USAO agrees to:

13          a.   Not contest facts agreed to in this agreement.

14          b.   Abide by all agreements regarding sentencing contained

15   in this agreement.

16          c.   At the time of sentencing, move to dismiss the

17   remaining counts of the indictment as against defendant.  Defendant

18   agrees, however, that at the time of sentencing the Court may

19   consider any dismissed charges in determining the applicable

20   Sentencing Guidelines range, the propriety and extent of any

21   departure from that range, and the sentence to be imposed.

22          d.   At the time of sentencing, provided that defendant

23   demonstrates an acceptance of responsibility for the offense up to

24   and including the time of sentencing, recommend a two-level reduction

25   in the applicable Sentencing Guidelines offense level, pursuant to

26   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

27   additional one-level reduction if available under that section.

28

3

e.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 32 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

f.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1001, 1014, 1028, 1028A, 1029, 1341, 1343, 1344, 1956, and 1957, arising out of defendant's conduct described in the agreed-to factual basis set forth in in Exhibit A to this agreement. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, the following must be true:

4

First, there was an agreement between two or more persons to commit the crime of wire fraud as charged in the indictment; and

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

5.   The conspiracy to which defendant has agreed to plead guilty involves an agreement to commit the substantive offense of wire fraud (18 U.S.C. § 1343).

The elements of wire fraud are as follows:

First, the defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

A wiring is caused when one knows that the wires will be used in the ordinary course of business or when one can reasonably foresee such use. It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate or foreign in nature. Rather it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate or foreign wire communication must have actually

occurred in furtherance of the scheme. It does not matter whether the material wired was itself false or deceptive so long as the wires were used as part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained.

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $6,049,911, but

recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported

from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Exhibit A, which is incorporated herein by reference, and defendant and the USAO further agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1), § 2X1.1(a)] |
| Specific Offense Characteristics | | |
| Intended loss greater than $3,500,000 and less than or equal to $9,500,000 | +18 | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| 10 or more victims | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |

Defendant and the USAO agree that an upward adjustment applies under U.S.S.G. § 3B1.1 based on defendant's role in the offense; defense maintains +2 is the appropriate role enhancement, and the USAO reserves the right to argue between +2 and +4, inclusive, for the applicable role enhancement.  Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, including but not limited to enhancements and adjustments under U.S.S.G. § 2B1.1(b)(10), U.S.S.G. § 2B1.1(b)(11), and U.S.S.G. § 3B1.3.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

 a.   The right to persist in a plea of not guilty.

 b.   The right to a speedy and public trial by jury.

 c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

 d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

 e.   The right to confront and cross-examine witnesses against defendant.

 f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

 g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF RETURN OF DIGITAL DATA

17.    Understanding that the government has in its possession digital devices and/or digital media seized in connection with this case, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

## WAIVER OF APPEAL OF CONVICTION

18.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19.    Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 32 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any

portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $6,049,911; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 32 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $6,049,911.

<u>WAIVER OF COLLATERAL ATTACK</u>

21. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of

conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

22.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

24.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

25.   Defendant agrees that if defendant, at any time after the effective date of this Agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

26.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

14

extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

//

1        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2    31.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 TRACY L. WILKISON
United States Attorney

9

10 _____    03/23/22
KERRY L. QUINN                Date
11 Assistant United States Attorney

12 _____    3/22/22
BIANCA GONZALEZ            Date
13 Defendant

14 _____    3 22 22
GARO GHAZARIAN           Date
15 Attorney for Defendant
BIANCA GONZALEZ
16

17              CERTIFICATION OF DEFENDANT

18    I have read this agreement in its entirety.  I have had enough

19 time to review and consider this agreement, and I have carefully and

20 thoroughly discussed every part of it with my attorney.  I understand

21 the terms of this agreement, and I voluntarily agree to those terms.

22 I have discussed the evidence with my attorney, and my attorney has

23 advised me of my rights, of possible pretrial motions that might be

24 filed, of possible defenses that might be asserted either prior to or

25 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26 of relevant Sentencing Guidelines provisions, and of the consequences

27 of entering into this agreement.  No promises, inducements, or

28 representations of any kind have been made to me other than those

1  contained in this agreement. No one has threatened or forced me in
2  any way to enter into this agreement. I am satisfied with the
3  representation of my attorney in this matter, and I am pleading
4  guilty because I am guilty of the charge and wish to take advantage
5  of the promises set forth in this agreement, and not for any other
6  reason.

_____     __3/22/22_____
BIANCA GONZALEZ                        Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

11  I am BIANCA GONZALEZ's attorney. I have carefully and
12  thoroughly discussed every part of this agreement with my client.
13  Further, I have fully advised my client of her rights, of possible
14  pretrial motions that might be filed, of possible defenses that might
15  be asserted either prior to or at trial, of the sentencing factors
16  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
17  provisions, and of the consequences of entering into this agreement.
18  To my knowledge: no promises, inducements, or representations of any
19  kind have been made to my client other than those contained in this
20  agreement; no one has threatened or forced my client in any way to
21  enter into this agreement; my client's decision to enter into this
22  agreement is an informed and voluntary one; and the factual basis set
23  forth in this agreement is sufficient to support my client's entry of
24  a guilty plea pursuant to this agreement.

_____     __3|22|22_____
GARO GHAZARIAN                         Date
Attorney for Defendant
BIANCA GONZALEZ

18

**EXHIBIT A**

1  Background Facts

2      At all relevant times:

3          a.   Defendant BIANCA GONZALEZ also known as "Blanca
4  Schoneke" ("defendant") was a resident of Whittier, California, and
5  other locations in the Central District of California and the State
6  of Florida.

7          b.   West Coast Realty Services, MCR, Golden Realty,
8  Golden Star Escrow, American Investments, Allstar Escrow, Elite
9  Escrow, Pride Financial, and Seaside Realty were all companies that
10 defendant and her co-conspirators operated out of offices in
11 Cerritos, La Palma, and Long Beach, California, for the purpose of
12 executing the fraud.

13         c.   The multiple listing service ("MLS") was a database
14 used by real estate brokers and others in the real estate industry
15 to list and find properties for sale.

16         d.   A broker's license, which could be obtained in
17 California from the California Department of Real Estate, was
18 required to list properties on MLS.

19         e.   An open house was a marketing technique used to
20 market properties to potential purchasers, allowing potential
21 purchasers to view properties before purchasing them, typically in a
22 drop-in fashion during a designated time period.

23         f.   An escrow was a contractual arrangement in which a
24 third party received and disbursed money for the primary transacting
25 parties, with the disbursement dependent on conditions agreed to by
26 the transacting parties.

27         g.   A down payment was a deposit made by a purchaser of
28 property, typically into an escrow account, as a deposit on the

                              1        Agreed and accepted:  B.G.

1  purchase price for the property, following acceptance by the seller
2  of a purchaser's offer.

3          h.   A short sale was a sale of property for a price less
4  than the amount outstanding on a mortgage loan secured by the
5  property. A short sale required approval of the mortgage lender
6  holding the mortgage loan, and this requirement could delay the
7  process for finalizing such a sale.

8          i.   Bank 1 was a financial institution based in San
9  Francisco, California. Bank Account 1A was an account at Bank 1,
10  held in the name of Mario C Gonzalez dba MCR Escrow Division.
11  Object of the Conspiracy

12     From at least in or about November 2013 to at least in or about
13  December 2016, defendant, together with Adolfo Schoneke ("A.
14  Schoneke"), Mario Gonzalez ("M. Gonzalez"), co-conspirator no. 1
15  ("CC-1"), co-conspirator no. 2 ("CC-2"), and others (collectively,
16  the "co-conspirators"), knowingly combined, conspired, and agreed
17  with each other to commit wire fraud, in that they agreed to, and
18  did, engage in a scheme to defraud would-be purchasers of
19  residential properties (the "victims") by marketing properties to
20  victims that were not for sale and/or were not properties that the
21  co-conspirators were authorized to sell, and then they stole money
22  that victims transferred to them -- often by interstate wire --
23  toward the fake purchase price.

24  Manner and Means of the Conspiracy

25     In sum and substance, the object of the conspiracy was carried
26  out, and was to be carried out, in the following manner:

27     a.   Defendant and other co-conspirators would identify
28  properties that could be marketed to victims as though they were for

                              2      Agreed and accepted: **BG.**

1 sale even though, as defendant and other co-conspirators then knew:
2 (1) the properties were not for sale and/or the co-conspirators did
3 not have an ownership interest in the properties or authorization
4 from the owners to list the properties for sale; and (2) the co-
5 conspirators did not in any event intend to sell or to facilitate
6 the sale of the properties to the victims. The co-conspirators
7 found many of the properties used as part of the fraud from CC-2,
8 who was paid for the referrals.

9      b. Defendant and other co-conspirators would market the
10 properties to victims using M. Gonzalez's broker's license and the
11 licenses of other brokers (including brokers who were dead or
12 elderly, paying the living brokers a small fee in exchange for the
13 use of their licenses). Using the brokers' licenses, the co-
14 conspirators listed the properties on the MLS at prices that were
15 below market value to generate interest from prospective purchasers,
16 marketing the properties as short-sale opportunities.

17      c. In some instances, defendant, M. Gonzalez, and others
18 working at their direction would arrange to make the properties
19 available for open houses and other showings and hold such open
20 houses and other showings at the properties. The co-conspirators
21 and others working at their direction would sometimes pay money to
22 the owners and occupants of the properties in exchange for their
23 agreement to allow open houses to be held and the properties
24 otherwise to be shown, and sometimes show properties without paying
25 the occupants. In other instances, the co-conspirators would market
26 the properties as sight-unseen favorable sales opportunities.

27      d. Defendant and other co-conspirators would purport to
28 accept, on behalf of the supposed sellers of the properties (the

1  "sellers"), who were often identity theft victims, multiple offers
2  from multiple victims to purchase each of the properties, hiding
3  this fact from all of the victims, and instead indicating to each
4  victim that his or her offer had been the only one accepted.

5        e.    Defendant and other co-conspirators would list sellers'
6  names on purchase and sales agreements and other sales documents
7  and, in some instances, forge sellers' signatures on those
8  documents, and cause those documents to be sent to victims, again
9  making it falsely appear that sellers had accepted victims' offers
10 to purchase the properties.

11       f.    Defendant and other co-conspirators would tell victims
12 that the sellers required down payments as part of the sale, thereby
13 inducing the victims to transfer money into bank accounts controlled
14 by the co-conspirators, often by interstate wire transfer.

15       g.    Defendant and other co-conspirators would misleadingly
16 represent to the victims that the down payments would be held in
17 escrow accounts for safekeeping and until the transactions closed.
18 In fact, as defendant then knew, the co-conspirators controlled the
19 accounts into which the victims' money was deposited and transferred
20 and the victims' money would be withdrawn by and distributed between
21 and among the co-conspirators and others working for them without
22 the victims' knowledge or authorization.

23       h.    Defendant and other co-conspirators would mislead the
24 victims by falsely representing that they were working to try to
25 finalize the sales, falsely telling the victims that they were
26 working with mortgage lenders to try to obtain short-sale approvals,
27 and they used these false representations to explain delays in the
28 purported sales transactions.

4        Agreed and accepted:  B.G.

1          i.     Defendant would provide scripts to other co-conspirators
2   and others working at their direction, so they could provide fake
3   updates to victims about the status of the fake short sale approval
4   process and the fake short sale transactions.  The co-conspirators
5   and others working at their direction would provide these fake
6   updates to victims, which maintained the false pretense that the co-
7   conspirators were working on obtaining short sale approvals from
8   mortgage lenders and otherwise diligently working on progressing the
9   transactions toward conclusion.

10         j.     In certain instances, defendant and other co-conspirators
11  would provide victims and their representatives with fake short sale
12  approval letters, falsely and fraudulently making it appear that the
13  mortgage lenders had approved the short sale transactions and that
14  all preconditions to closing the transactions had been satisfied.
15  As defendant and other co-conspirators knew and intended, these fake
16  short sale approval letters would induce victims to transfer, often
17  by interstate wire, the remainder of what the victims understood was
18  the purchase price to bank accounts the co-conspirators controlled.

19         k.     Defendant was as one of the office managers at the various
20  office locations used in the fraud.  Among other duties and
21  responsibilities, defendant interviewed and trained office workers
22  (the "office workers") to help the co-conspirators carry out the
23  scheme.  At the co-conspirators' direction, the office workers would
24  open bank accounts in their own names, including Bank Accounts 1A,
25  1B, 2, 3, and 4 identified in the indictment (the "bank accounts").
26  The co-conspirators would use the bank accounts to collect money
27  from victims, which they would then convert to cash, as described in
28

                                    5          Agreed and accepted: **B.G.**

1 the next subparagraph, and divide the proceeds between and among
2 themselves and others working for them.

3 l. At the co-conspirators' direction, the office workers
4 would withdraw cash from the bank accounts, including through
5 withdrawals at branch locations and checks cashed at branch
6 locations, and the office workers would give the cash to the co-
7 conspirators to be divided among themselves and used for operating
8 expenses. In this way, defendant and other co-conspirators would
9 convert victims' money into cash in order to make the proceeds
10 harder to trace and to hide their involvement in the transactions.

11 m. Defendant and other co-conspirators, and others working at
12 their direction, would use aliases and fake names and identities to
13 hide their real identities from victims. Among other uses of fake
14 identities, defendant, A. Schoneke, M. Gonzalez, CC-1, and others
15 working at the co-conspirators' direction would impersonate brokers
16 whose names and licenses had been used to list properties and
17 sellers whose properties were supposedly being sold.

18 n. When victims would realize what had happened and demand
19 their money back, defendant and other co-conspirators would return
20 some money to certain victims to avoid additional collection efforts
21 and to try to avoid reports being made to law enforcement, and they
22 would also change the location of their offices, the name of the
23 broker and broker's license used to list properties, and their
24 business names, as well as changing their own aliases and fake
25 identities, in order to be able to continue the fraudulent scheme.

26 o. Defendant and her co-conspirators used numerous properties
27 to further the fraudulent scheme including properties located on the

28

6          Agreed and accepted: **BG**.

following streets, in the Central District of California, which were fraudulently marketed to the following victims, among others:

| Property | Victim(s) |
|---|---|
| Ardath Avenue, Gardena, California (the "Ardath property") | C.R. |
| Eastleigh Avenue, Hacienda Heights, California (the "Eastleigh property") | J.A., F.G. |
| Agnolo Drive, Rosemead, California (the "Agnolo property") | F.G. |
| Bunbury Drive, Whittier, California (the "Bunbury property") | W.C. |
| Spy Glass Hill Road, Whittier, California (the "Spy Glass property") | S.F. |
| South Monterey Way, Ontario, California (the "Monterey Way property") | H.N. |
| Ramona Ave, Chino, California (the "Ramona property") | W.C.T., C.C. & J.C. |
| Schmidt Road, El Monte, California (the "Schmidt property") | V.Z., C.T. |
| Iris Lane, El Monte, California (the "Iris property") | S.L. |
| South Denver Ave, Gardena, California (the "Denver Ave property") | B.B. |

In total, the co-conspirators caused more than $6 million in losses to more than 300 victims.

Overt Acts

On or about the dates set forth in the indictment, in furtherance of the conspiracy and to accomplish its object, defendant, together with other co-conspirators, committed and

7          Agreed and accepted: **B.G.**

1    willfully caused others to commit all the overt acts listed in the

2    indictment, including the following:

3      <u>Overt Act No. 4</u>:  On August 27, 2015, defendant and A. Schoneke

4    and other co-conspirators caused victim J.A. to transfer $10,000 to

5    Bank Account 1A, as a down payment on the Eastleigh property.

6                    *     *     *

7                CERTIFICATION OF DEFENDANT

8      I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA

9    AGREEMENT ("statement of facts") in its entirety.  I have had enough

10    time to review and consider this statement of facts, and I have

11    carefully and thoroughly discussed every part of it with my

12    attorney.  I agree that this statement of facts is accurate and

13    correct, and is sufficient to support a plea of guilty to the charge

14    described in the plea agreement and to establish the Sentencing

15    Guidelines factors set forth in paragraph 13 of the plea agreement.

16

17    BIANCA GONZALEZ            3/22/22

        Defendant               Date

18          CERTIFICATION OF DEFENDANT'S ATTORNEY

19      I am BIANCA GONZALEZ's attorney.  I have carefully and

20    thoroughly discussed every part of this statement of facts with my

21    client and agree that it is sufficient to support a plea of guilty

22    to the charge described in the plea agreement and to establish the

23    Sentencing Guidelines factors set forth in paragraph 13 of the plea

24    agreement.

25

26    GARO GHAZARIAN            3/22/22

        Attorney for Defendant        Date

27    BIANCA GONZALEZ

28

                          8      Agreed and accepted: B.G.